**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JAMES ANDERSON,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>     Defendant. | Case No. 24-cv-1916 (JMC) |

**MEMORANDUM OPINION**

Plaintiff James Anderson filed this suit against the U.S. Department of Defense, challenging a decision rendered by the Board for Correction of Naval Records (BCNR). Plaintiff served in the Navy from January 1968 to August 1973. In 1976, a Physical Evaluation Board (PEB) assigned him a 30% disability rating based on injuries to both of his knees and his right shoulder. Five years later, in 1981, another PEB assigned him a 20% disability rating, seemingly only accounting for his knee injuries. Plaintiff was separated from the Navy with a lump-sum payment because his disability rating did not render him eligible for medical retirement.

Decades later, in 2020, Plaintiff asked the BCNR to correct the 1981 PEB decision and alter his disability rating to at least 30% to make him eligible for disability retirement. The BCNR rejected both his initial application and his 2023 request for reconsideration. In considering Plaintiff's application, the BCNR noted that Plaintiff's complete PEB file from 1981 had been lost. Alongside his request for reconsideration, Plaintiff provided only partial medical records from the 1970s and 80s, with a single page summarizing the 1981 PEB's findings. In reconsidering Plaintiff's application, the BCNR (1) requested an advisory opinion from a medical officer, who found that there was no evidence in the record to challenge the 1981 findings; and (2) relied on the

1

presumption of regularity to find that the 1981 PEB properly discharged its duties, even in the absence of Plaintiff's complete file. These choices were not arbitrary, capricious, or otherwise contrary to law. As such, the Court will affirm the BCNR's decision below, **GRANT** the Department's cross-motion for summary judgment, ECF 21, and **DENY** Plaintiff's motion for summary judgment, ECF 18.[1]

## I.    BACKGROUND

This case tracks Plaintiff's multi-decade journey through the Navy's Disability Evaluation System. In this section, the Court provides an overview of the relevant Navy regulations, the BCNR appeals process, and the factual and procedural history of this case.

### A.  The Navy Disability Evaluation System

Upon a finding by the Secretary of the Navy that a service member is "unfit to perform" the duties of their rank because of physical disability, the Secretary, through the Navy's Disability Evaluation System, can determine if the member qualifies for medical separation or medical retirement. 10 U.S.C. §§ 1201–03. As part of the process, the member's physical disability is rated under the Veterans Affairs Schedule for Rating Disabilities (VASRD) "in use . . . at the time of the determination." *Id.* § 1201(b)(2)(B); *id.* § 1203(b)(4). If the member's disability "is or may be of a permanent nature" and receives a rating of 30% or less, the member qualifies for medical separation and receives a lump-sum severance payment. *Id.* § 1203(a), (b)(3), (b)(4). If it is determined that the disability "is of a permanent nature and stable" and that the disability is rated at least 30%, the member can qualify for medical retirement, with corresponding benefits and pay. *Id.* § 1201(a), (b)(1), (b)(3). If additional time is required to determine if a member's disability is

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

"of a permanent nature and stable," the Secretary can place the member on the Temporary Disability Retired List (TDRL). *Id.* § 1202.

Under the Navy's 1977 Disability Evaluation Manual, a member is "unfit because of physical disability" when he is "unable, because of disease or injury, to perform the duties of his office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his employment on active duty." Secretary of Navy Instruction (SECNAVINST) 1850.4, Part II, § 207(a) (1977). The regulations note that the "mere presence of physical disability does not, in itself, require a finding of unfitness." *Id.* § 207(b). Instead, the service member is evaluated to see if "the nature and degree of functional impairment" impacts duties the member is reasonably expected to be assigned. *Id.* Members are initially evaluated for fitness for duty by a Medical Evaluation Board (MEB). The MEB will conduct an examination, review medical records, and determine if the member is fit to remain in active service. *Id.*, Part V, §§ 502–06. If the MEB determines that the member's condition does not meet standards to be retained in active duty, the MEB can refer the member's case to a Physical Evaluation Board. *Id.* § 506(c). The PEB evaluates the member and makes findings and recommendations about the member's fitness for duty and eligibility for benefits, including their disability rating in accordance with the VASRD. *Id.*, Part VII, §§ 702–06.

### B. Administrative Process for Correction of Military Records

By statute, the Secretary of the Navy "may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an injustice" and he can do so by acting through the Board for Correction of Naval Records. 10 U.S.C. § 1552(a)(1); 32 C.F.R. § 723.2. The BCNR consists of civilians in the Department of the Navy who are appointed by the Secretary. 32 C.F.R. § 723.2(a). While it is not "an investigative body," the

3

BCNR considers applications to determine if there is "error or injustice" in the records of members of the Navy or the Marine Corps. *Id.* § 723.2(b). In adjudicating applications, the BCNR "relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties," and applicants have the burden of overcoming this presumption. *Id.* § 723.3(e)(2). When the BCNR denies relief, it issues a "statement of the grounds for denial," which can be challenged as the agency's final action, subject to exceptions. *Id.* § 723.6(a)(3), (e).

### C. Plaintiff's Physical Evaluations

Plaintiff enlisted in the United States Navy in 1968. ECF 29 at 7 (AR0001). On June 11, 1974, a MEB reviewed Plaintiff's chronic pain in both knees. *Id.* On June 26, 1974, an informal PEB convened and determined that Plaintiff was fit for duty, returning him to full duty status. *Id.* at 27 (AR0015). On July 22, 1974, Plaintiff's commanding officer submitted a statement that Plaintiff had "difficulty in climbing ladders and bending his legs." *Id.* at 128 (AR0243). He was "relieved of military duties to avoid long periods of standing." *Id.* On June 23, 1976, a second MEB evaluated Plaintiff's continued knee pain. *Id.* at 7 (AR0001). This MEB found that Plaintiff was "incapacitated for the full duties of his rank" and referred the matter to the PEB again. *Id.* On August 11, 1976, a PEB determined that Plaintiff was unfit for duty. *Id.* The 1976 PEB assigned a disability rating of 10% to each of Plaintiff's knees as a result of "chondromalacia[] patellae" and a 10% disability rating to "enthesitic syndrome" in Plaintiff's right shoulder. *Id.* at 110 (AR0080). Pursuant to these findings, Plaintiff was placed on the TDRL on October 11, 1976. *Id.* at 7 (AR0001).

On May 22, 1978, Plaintiff underwent a periodic physical examination for the TDRL. His diagnoses were maintained. *Id.* at 8 (AR0002). On February 4, 1980, Plaintiff underwent another

periodic examination with the same result. *Id.* On May 18, 1981, Plaintiff received a rheumatology evaluation, which recommend that he be "discharged" from the TDRL. *Id.*; *id.* at 29 (AR0017) (noting that the evaluation included "radiological, laboratory, and physical examinations" but did not find any evidence of a generalized arthritis syndrome). On July 8, 1981, an informal PEB convened and found that Plaintiff was "unfit for duty" and recommended separation with a disability rating of 20%. *Id.* at 8 (AR0002). While the PEB findings form listed three medical diagnoses—chondromalacia patellae, enthesitic syndrome, and fibrositis syndrome—it assigned a VA code and a cumulative disability rating of 20% only in the line corresponding with the chondromalacia patellae knee condition. *Id.* at 112 (AR0081). Based on this PEB finding, Plaintiff was "separated from the TDRL [with] severance pay but no other disability benefits." *Id.* at 8 (AR0002).

Both Parties agree that almost all of the records of the 1981 PEB's decision making process have been lost. The case centers around a single document that Plaintiff has provided of that process—a page of the July 8, 1981 PEB Proceedings and Findings. ECF 29 at 112 (AR0081). Appendix H of the Navy's 1977 Disability Evaluation Manual lists at least two other documents that are typically included in the informal PEB process, including a "Record of Proceedings" and a data record and control card. *Id.* (Plaintiff's PEB form identified by the code NAVSO 6100/16); ECF 18-1 at 126 (sample NAVSO 6100/16 form); *see id.* at 123–25 (samples of other PEB forms that may be missing from Plaintiff's record, including NAVSO 6100/9 and NAVSO 6100/15).[2]

---

[2] In totality, the records available to the Court include: a June 1974 MEB report and form referring Plaintiff to the PEB, ECF 29 at 123–26 (AR0238–41); a June 1974 PEB form finding Plaintiff fit for duty, *id.* at 127 (AR0242); a July 1974 letter from his commanding officer detailing his physical problems, *id.* at 128 (AR0243); an undated letter from his ship's medical department representative to the PEB, *id.* at 129 (AR0244); Plaintiff's requested addendum to the MEB describing his shoulder pain, *id.* at 130 (AR0245); a June 1976 MEB report, *id.* at 133–36 (AR0686–

### D. Procedural History

On March 5, 2020, Plaintiff filed an "Application for Correction of Military Record" with the BCNR.[3] ECF 29 at 108 (AR0079). He argued that the PEB only provided him a 20% rating "for the first diagnosis of bilateral chrondromalacia (10% for each knee) and "failed to code and rate the other two diagnosed disabilities." *Id.* He argued that if it had rated those disabilities, his rating would have been over 30% and he would have been granted retirement, with its corresponding benefits. *Id.* The BCNR issued its initial decision on December 22, 2020. *Id.* at 103–04 (AR0076–77). The BCNR noted that the 1976 PEB had assigned Plaintiff a 30% rating for his knee and shoulder conditions, but that the 1981 PEB "reduced [his] combined rating to 20%." *Id.* The BCNR stated that it was "hampered by the lack of" the PEB record but would apply the presumption of regularity to presume that Navy personnel "properly discharged their official duties at the time. *Id.* As a result, the BCNR "found insufficient evidence of error or injustice to warrant a change to your record." *Id.*

On January 5, 2021, Plaintiff submitted a request for reconsideration to the BCNR. ECF 29 at 39 (AR0023). He again argued that there was an "error" in his PEB disability rating that "cost [him] a disability retirement." *Id.* In April 2021, Plaintiff submitted a PowerPoint presentation with arguments in support of his position and provided additional records from

---

89); Plaintiff's 1976 PEB findings, *id.* at 61 (AR0041); his May 1978 TDRL reexamination report, *id.* at 62–64 (AR0042–44); a March 1980 letter informing Plaintiff he remained on TDRL status, *id.* at 65 (AR0045); a May 1981 medical examination record recommending discharge from the TDRL, *id.* at 117–19 (AR0207–09); the disputed July 1981 PEB findings, *id.* at 66–67 (AR0046–47); a list of his diagnoses while on active duty from 1973–76, *id.* at 70–73 (AR0050–53); and a longer list of medical records stretching from 1973 through 2009, *id.* at 93–97 (AR 0068–72). As stated above, none of the records, apart from the July 1981 PEB findings, are records of the decisions or deliberations of the 1981 PEB.

[3] Applications for correction of a record must generally be "filed within 3 years after discovery of the alleged error or injustice," but failure to file within that timeframe can be excused by the BCNR "if it finds it would be in the interest of justice to do so." 32 C.F.R. § 723.3(b). The BCNR noted that while Plaintiff's application "was not filed in a timely manner," it waived the statute of limitations "in the interest of justice" and considered his case on the merits. ECF 29 at 103–04 (AR0076–77).

proceedings in the 1970s and 1980s. *Id.* at 49 (AR0029). None of those records contain further deliberations by the 1981 PEB. He argued that "[t]here is no record that a []PEB review was performed" and that there is only a "one-page Proceedings & Findings form used" for his separation which was "incomplete" and "incorrect" because two listed disabilities were not included in his rating. *Id.* at 51 (AR0031).

The BCNR solicited an advisory opinion from Dr. Robert Alonso, a BCNR physician advisor, which was issued on November 16, 2022. ECF 29 at 31 (AR0019). Dr. Alonso stated that he reviewed Plaintiff's medical records and history but found "insufficient support" for the request for reconsideration. *Id.* at 26 (AR0014). He noted that the "mere presence of a medical condition corresponding to a disability rating contained in the VASRD is insufficient to warrant either a finding of unfitness . . . or a specific disability rating by the [] PEB in the absence of demonstrated duty performance impairment of sufficient magnitude as to render a Service member Unfit for Continued Naval Service." *Id.* at 30 (AR0018). Dr. Alonso stated that Plaintiff's diagnoses of three medical conditions were "chronicled" through multiple MEB, PEB, and TDRL examinations. *Id.* at 31 (AR0019). Because "the records of the PEB's deliberations were not able to be located," it was not possible to further review Plaintiff's arguments regarding the PEB decision. *Id.* He concluded by noting that Plaintiff "provided no new clinical evidence . . . that was not already available in the medical and service records" and that "the preponderance of objective clinical evidence provides insufficient support for [Plaintiff's] contention that at the time of his discharge he should have been awarded a higher disability rating." *Id.*

Plaintiff filed a rebuttal to the advisory opinion. ECF 29 at 20 (AR0010). Plaintiff argued that there was "documented evidence" that the 1981 PEB failed to discharge its duties, including

7

the fact that the findings did not include "[VA] Codes or Percent Disability ratings" for the enthesitic or fibrositis syndromes. *Id.* Plaintiff also argued that the 1981 PEB erred in reducing his total disability from 30% to 20%, which he claimed was a result of "ignoring medical evidence" from May 18, 1981 "that supports a much higher finding." *Id.* Plaintiff claimed that from 1976 to 1981 his conditions worsened "to involve all joints" and made it impossible to perform normal tasks. *Id.* at 21 (AR011).

On January 5, 2023, the BCNR rendered its decision on Plaintiff's reconsideration request. ECF 29 at 7 (AR0001). The BCNR cited its prior decision relying on the presumption of regularity. *Id.* at 8 (AR0002). The BCNR also cited the advisory opinion's conclusion that the "preponderance of objective clinical evidence provides insufficient support for [Plaintiff's] contention that at the time of his discharge he should have been awarded a higher disability rating." *Id.* at 8–9 (AR0002–03). The BCNR also considered Plaintiff's rebuttal to the advisory opinion and noted that Plaintiff did not "provide new clinical evidence" in that rebuttal. *Id.* at 9 (AR0003). The BCNR concluded that it "did not observe any evidence that there was any error or injustice apparent in the findings of the PEB or of the medical professionals during your evaluations in the PPE and your eventual discharge from the TDRL with a 20% rating."[4] *Id.* In fact, the BCNR concluded that Plaintiff was "appropriately evaluated by professionals during [his] evaluation by the MEB, the PEB, and PPEs, and those professionals made findings and

---

[4] The 2020 BCNR stated that the 1981 PEB had found Plaintiff "unfit for Bilateral Chondromalacia Patellae, Enthesitic Syndrome, and Fibrositic Syndrome." ECF 29 at 103 (AR0076). But the 2023 BCNR decision does not include similar language. Instead, the 2023 decision only states that the 1981 PEB "convened and found [him] . . . unfit for duty because of a physical disability and recommended . . . [separation] with a cumulative disability rating of 20%." *Id.* at 8 (AR0002). Because the 2023 BCNR decision is the final agency action challenged in this case, as it represents the "consummation of the agency's decisionmaking process" upon Plaintiff's request for reconsideration, the Court analyzes the sufficiency of that decision and does not rely on the passing statement in the 2020 decision. *Bennett v. Spear*, 520 U.S. 154, 178 (1997); *Milice v. Consumer Prod. Safety Comm'n*, 2 F.4th 994, 1000 (D.C. Cir. 2021) ("If a party asks an agency to reconsider its decision, the request renders the agency's otherwise final action non-final with respect to the requesting party.").

recommendations that were supported by medical evidence." *Id.* at 9–10 (AR0003–04). Again, the BCNR noted that it relied on the presumption of regularity in upholding the actions of Navy personnel and that it did not observe "any evidence to the contrary" in Plaintiff's case. *Id.*

Plaintiff filed his complaint in this Court, bringing his claims under the APA. 5 U.S.C. § 706; ECF 1. He filed a motion for summary judgment and the Department filed a cross-motion. ECF 18; ECF 21. Each side also filed replies in support of their motions. ECF 24; ECF 27.

## II.    LEGAL STANDARD

The Court will grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party," and "the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In other words, in an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

"Under the [APA], a court may set aside an agency's final decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (citing 5 U.S.C. § 706(2)(A)). A court "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Id.* That explanation need not be comprehensive; an agency must provide only a "brief

statement" to explain "why it chose to do what it did." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). What is more, courts review the agency's explanation with considerable deference. A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 1351–52.

As stated above, the Secretary of the Navy "may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Considering the wide latitude granted to the Secretary by Congress, as well as courts' general reluctance to interfere in matters of military judgment, this Circuit has found that certain decisions by boards like the BCNR receive the benefit of an "unusually deferential application of the arbitrary or capricious standard." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *see Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014); *see also Sissel v. Wormuth*, 77 F.4th 941, 947 (D.C. Cir. 2023) ("[T]he cases in which we have emphasized the need for a heightened standard of review to safeguard military judgment have involved decisions concerning active personnel, such as performance reviews and promotion decisions.").[5]

## III.   ANALYSIS

In 2020, Plaintiff filed an application with the BCNR seeking correction of his 1981 PEB records. In looking into the matter, the BCNR was not able to find the records of the 1981 PEB's

---

[5] Plaintiff argues that in contrast to decisions involving active personnel, including "performance reviews and promotion decisions," disability determinations for former service members are governed by "ordinary arbitrary-and-capricious review" because they do not "destabilize military command." ECF 24 at 17 (citing *Sissel*, 77 F.4th at 946–47). The D.C. Circuit's analysis in *Sissel* is focused on the context of the statute establishing the Physical Disability Board of Review (PDBR). In *Sissel*, the Circuit analyzed "whether the statute empowering the PDBR, 10 U.S.C. § 1554a, exudes" the same "unusual deference to the Secretary" as 10 U.S.C. § 1552(a)(1), which allows the Secretary to exercise his discretion to correct military records only "when [he] considers it necessary to." *Sissel*, 77 F.4th at 946. Some courts in this district have continued to apply the "unusually deferential" standard in cases relating to the BCNR and medical retirement for disability after *Sissel*. *Markel v. Del Toro*, No. 22-cv-1389, 2025 WL 304875, at *2–3 (D.D.C. Jan. 27, 2025); *Quailes v. Del Toro*, No. 19-cv-2541, 2023 WL 5206094, at *3–4 (D.D.C. Aug. 14, 2023). But because Plaintiff's claims fail to satisfy even the usual arbitrary-and-capricious standard, the Court has no reason to decide what precise amount of deference is applicable here.

deliberations. The BCNR is left with only a single page summarizing the PEB's findings. Unable to delve into the 1981 PEB's reasoning, the BCNR defaulted to applying the presumption of regularity. The Court finds that it did so correctly because Plaintiff, as the party seeking a correction, failed to "prove clearly and convincingly that the presumption of regularity . . . should not apply, and that action is warranted to correct a material error, inaccuracy, or injustice." *Cone v. Caldera*, 223 F.3d 789, 792–93 (D.C. Cir. 2000).

Plaintiff cites a number of alleged flaws in the 1981 PEB findings, but none of them demonstrate that the 1981 PEB acted contrary to law, ignored material evidence, or failed to engage in reasoned decisionmaking. *See Lebrun v. England*, No. 02-5290, 2003 WL 842245, at *1 (D.C. Cir. Feb. 25, 2003) (quoting 32 C.F.R. § 723.3(e)(2)) (requiring "substantial evidence to the contrary" to challenge the presumption that officers "have properly discharged their official duties"); *Rutledge v. Del Toro*, No. 23-cv-1583, 2024 WL 3225958, at *11 (D.D.C. June 28, 2024) (citing 32 C.F.R. §§ 723.2(b), 723.3(e)(1)) ("Because the BCNR is not an investigative body, the burden of proof remains with the serviceman at all times."). Because the BCNR reasonably explained its reliance on the presumption of regularity in affirming the 1981 PEB findings, the Court will grant summary judgment in favor of the Department.[6]

### A. Contrary to Law

The Court first addresses Plaintiff's arguments that the BCNR's decision was contrary to law because it affirmed the 1981 PEB findings that failed to include (1) separate disability ratings and (2) separate VA diagnostic codes for each of his listed medical conditions.

---

[6] The Parties have disputed whether the Court has jurisdiction to order the BCNR to correct its records or only to remand for further reconsideration. ECF 21 at 23; ECF 24 at 21. Because the Court is denying Plaintiff's motion for summary judgment and not granting any relief or reconsideration, it is not necessary to reach this question.

Plaintiff's 1981 PEB findings list three medical diagnoses: a bilateral knee condition, enthesitic syndrome, and fibrositis syndrome. ECF 29 at 67 (AR0047). But it lists just one VA diagnostic code (5099-5003) and one disability rating (20%) on the line of the form corresponding with the knee condition. *See id.* The BCNR, in 2020 and 2023, had no way of knowing what the 1981 PEB thought about Plaintiff's two other medical conditions without examining the file containing the PEB's deliberations. *Id.* at 9 (AR0003) (noting that "records of the PEB's deliberations were not able to be located, despite multiple attempts to find these files on the part of the PEB administrative staff"). The 1981 PEB could have found that those conditions were not unfitting for a number of legitimate reasons, including that they did not significantly impair his ability to undertake his duties, were not permanent or stable, or did not meet other requirements for disability determinations. *See* 10 U.S.C. § 1201. Because the BCNR cannot know the 1981 PEB's reasoning, the BCNR was correct in applying the presumption of regularity if it thought that the 1981 PEB *could have* properly discharged its duty in not assigning diagnostic codes or disability ratings to those other two conditions. Plaintiff can only succeed in his claims, then, if he "prove[s] clearly and convincingly" that the 1981 PEB *must have* violated the law and committed "material error[s]." *Cone*, 223 F.3d at 792–93. The Court finds no such proof.

Plaintiff's first and primary argument is that the BCNR erroneously approved the 1981 PEB's findings, which, he argues, are evidently contrary to law because they contain only one disability rating of 20% for three listed medical conditions. ECF 18 at 26; ECF 29 at 67 (AR0047). Plaintiff argues that, in failing to provide separate disability ratings for each listed condition, the 1981 PEB acted contrary to SECNAVINST 1850.4, and the BCNR was required to apply 10

U.S.C. § 1216a(b), as analyzed by the D.C. Circuit's decision in *Sissel v. Wormuth*, 77 F.4th 941 (D.C. Cir. 2023), to correct the PEB findings.[7] ECF 18 at 27; ECF 24 at 11.

The Court disagrees. First, governing Navy regulations only required a separate disability rating for each unfitting condition and Plaintiff has not established that the 1981 PEB concluded that all three of Plaintiff's medical conditions were unfitting. The BCNR's decision cited the advisory opinion, which found that Plaintiff's in-service diagnoses were accurately documented and were the product of the "full and proper processes of the PEB." ECF 29 at 9 (AR0003). In the advisory opinion, Dr. Alonso explained that the "mere presence of a medical condition" that is listed in the VASRD "is insufficient to warrant either a finding of unfitness . . . or a specific disability rating by the [] PEB." *Id.* at 30 (AR0018). Instead, the PEB needed to separately evaluate whether the medical condition caused "demonstrated duty performance impairment of sufficient magnitude as to render a Service member Unfit for Continued Naval Service." *Id.* Plaintiff's citation to the listing of other conditions is insufficient to prove that the PEB erred in failing to rate those conditions. *See Havens v. Mabus*, 759 F.3d 91, 94 n.7 (D.C. Cir. 2014) ("Unlike the VA, the military departments do not award ratings based on the mere presence of conditions listed in the [VASRD].").

The Navy regulations Plaintiff cites are consistent with this view because they only require disability ratings to be listed for those medical conditions that are found to be unfitting. *See* SECNAVINST 1850.4, Part II, § 212(c) (1977) ("Once it has been determined that a member is

---

[7] The Department argues that Plaintiff forfeited reliance on these legal authorities by not raising them before the BCNR. ECF 21 at 18–19. But Plaintiff was pro se before the BCNR and he raised the factual thrust of the legal arguments he is making now, without citing to those specific laws. *See* ECF 29 at 20–22 (AR0010–12) (arguing that enthesitic and fibrositis syndrome should have been rated by the 1981 PEB, resulting in a higher disability rating). The Court will generously construe his arguments before the BCNR and consider the legal arguments he raises on appeal in support of his claim. *See Roberts v. Harvey*, 441 F. Supp. 2d 111, 121 (D.D.C. 2006) ("When presented with the question of whether a pro se applicant who is seeking the correction of his military personnel records has raised an argument before the Board with sufficient clarity, this Court and the agency must take pains to protect the rights of pro se parties against the consequences of technical errors." (emphasis omitted)).

unfit for duty and that the unfitness is ratable, all physical conditions meeting the rating criteria of the [VASRD] must be given an appropriate rating."). The regulations note that if "a medical condition which causes or contributes to unfitness for military service is of such mild degree that it does not meet the criteria even for the lowest rating" provided in the VASRD, a zero percent rating "may be applied in such cases." *Id.* § 212(e). Plaintiff argues that this zero percent rating requirement demonstrates that the 1981 PEB must, at the very least, list a zero percent disability rating for Plaintiff's enthesitic and fibrositis syndromes. Crucially, however, even zero percent ratings are only required if the conditions "cause[] or contribute[] to unfitness." *Id.* Another form provided by the Navy for assessing disability ratings further supports the argument that a finding of "unfitness" is a separate and required step. The form provides a space to list "diagnoses" but categorizes the status of the diagnosis as "continue TDRL," "unfit and disability," or "fit for duty." ECF 18-1 at 122 (TDRL Re-Evaluation Form NAVSO 6100/3). The form supports the Department's argument that not all diagnoses must be accompanied by a disability rating—only those which fall into the "unfit and disability" category. *See id.*

Plaintiff then seeks to retroactively apply more recently developed regulations and standards to the 1981 PEB. He compares his case to *Sissel v. Wormuth* and its application of 10 U.S.C. § 1216a(b). Sissel, an Army veteran, was assigned a 20% disability rating by a PEB in 2005 but sought reconsideration of his disability rating by the Physical Disability Board of Review in 2014. *Sissel*, 77 F.4th at 944–45. The Circuit upheld his challenge, finding that the PDBR failed to properly apply Army regulations and 10 U.S.C. § 1216a(b). *Id.* at 948–49. As the Department explained in its reply brief, however, *Sissel* is inapposite because it concerns different statutory language that does not apply to Plaintiff's case. First, section 1216a(b) states:

> In making a determination of the rating of disability of a member of the armed forces for purposes of this chapter, the Secretary concerned shall take into account all medical

14

conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating.

10 U.S.C. § 1216a(b).

First, section 1216a(b) still requires the Secretary to conclude that the medical conditions "whether individually or collectively" contribute to rendering the member unfit for service. *Id.* As discussed above, this determination is missing from the 1981 PEB findings for Plaintiff's enthesitic and fibrositis syndromes. Second, this statutory provision was not in effect at the time of Plaintiff's 1981 PEB proceedings, as it was passed in the 2008 National Defense Authorization Act. Pub. L. No. 110-181, § 1642(a), 122 Stat. 3, 465 (2008). But Plaintiff argues that the BCNR nonetheless was bound to apply the statute in evaluating Plaintiff's claims in 2020 and 2023 because, in *Sissel*, the D.C. Circuit applied section 1216a(b) to analyzing an Army veteran's 2005 discharge. ECF 24 at 11 ("[T]he D.C. Circuit has already applied § 1216a(b) in a similar situation in *Sissel*, in which the agency's challenged decision from 2005 arose *prior to* the enactment of § 1216a(b) in 2008.").

Plaintiff's arguments ignore the unique context in which *Sissel* was decided, which included the Circuit's analysis of 10 U.S.C. § 1554a. As part of the same 2008 defense appropriations act, Congress created a new board known as the Physical Disability Board of Review that would re-examine PEB findings and decisions for "members and former members of the armed forces who, during the period beginning on September 11, 2001, and ending on December 31, 2009 . . . separated from the armed forces due to unfitness for duty due to a medical condition with a disability rating of 20 percent disabled or less." Pub. L. No. 110-181, § 1643, 122 Stat. at 465 (codified at 10 U.S.C. § 1554a(a)–(c)). In other words, for specific plaintiffs like the Army veteran discharged in 2005, Congress created a new board to provide a second look at PEB findings. The D.C. Circuit held that, in conducting this additional review, the new board must apply the governing law at the time of its review, which included section 1216a(b). Section 1554a,

15

which created the PDBR, has an express purpose of "making retroactive corrective adjustments" of PEB decisions within a limited time period. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 210 (1988). But nothing in those laws or the Circuit's decision implied that Congress now required the BCNR to retroactively apply section 1216a(b) to all PEB reviews. The Court will thus apply the general principle against retroactive legislation and find that Congress did not intend the BCNR to apply a 2008 law to its analysis of the 1981 PEB findings. *See Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (citing the principle in which "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity").

Finally, the Circuit's decision in *Sissel* does not independently require this Court to interpret the Navy's 1977 Disability Evaluation Manual to contain a requirement to separately rate every medical condition. The Circuit found in *Sissel* that the PDBR failed to assign a disability rating to Sissel's leg condition, despite evidence that it contributed to his unfitness. The Army Regulations at issue stated that "a disability is compensable either if it, in itself, is unfitting or if it contributes to the unfitting condition." *Sissel*, 77 F.4th at 943 (citing 1990 Army Regul. 635-40 ¶ 4–19(f)(6)(b)). The Circuit found that the PDBR's decision suggested that "Sissel's leg condition contributed to his unfitness together with his back injury" because it did not disclaim the PEB's reference to the "constellation" of Sissel's injuries. *Id.* at 947. Here, unlike in *Sissel*, the Court has no evidence that the 1981 PEB thought Plaintiff's enthesitic or fibrositic syndromes contributed to unfitness. Additionally, Plaintiff has primarily argued that the enthesitic syndrome affecting his shoulder is a separate unfitting condition, not that it contributed to a "constellation" of injuries that collectively rendered him unfit. Accordingly, the Circuit's holdings in *Sissel*—which focus on

16

combinations of conditions and the standards for evaluating their contributions to unfitness—are inapposite.[8] *Id.* at 947–49.

Next, Plaintiff argues that the 1981 PEB was required by law to assign separate diagnostic codes to each of his conditions. ECF 18 at 30. Plaintiff argues that the 1981 PEB findings only provide one VA code of 5099-5003 for his three listed diagnoses. But as explained above, the PEB was not required to list a diagnostic code for every condition simply because those conditions can be found in the VASRD. The PEB only needed to analyze those conditions which it found contributed to Plaintiff's unfitness and it could have properly concluded that only Plaintiff's knee condition was unfitting, listing a VA diagnostic code on that line of the form. *See* ECF 29 at 67 (AR0047) (listing VA code 5099-5003 in the line corresponding with the knee injury). Plaintiff's authorities to the contrary are unavailing.[9] Plaintiff cites 38 C.F.R. § 4.25(b) for the proposition that "disabilities arising from a single disease entity . . . are to be rated separately as are all other disabling conditions, if any." *See* ECF 18 at 30. Plaintiff also cites the general principle that each disability must be rated under the most appropriate diagnostic code. *See* 38 C.F.R. § 4.27 ("Great care will be exercised in the selection of the applicable code number."). Applying this, Plaintiff argues he should have received separate diagnostic codes for enthesitic syndrome (5024) and fibrositis syndrome (5025), which are listed in the VASRD.[10] ECF 18 at 31. But, as analyzed

---

[8] Plaintiff also cites *McCord v. United States*, 131 Fed. Cl. 333 (2017) for the proposition that "the military has an obligation to separately rate each unfitting condition." ECF 18 at 29–30. That general principle again does not shed light on whether the 1981 PEB thought that Plaintiff's two other medical diagnoses constituted unfitting conditions. The court in *McCord* also relied on the detailed deliberations of the PEB, which were unavailable to the BCNR in this case. *See McCord*, 131 Fed. Cl. at 347 (citing the PEB's list of conditions on a DA Form 199).

[9] In addition to the authorities discussed in this paragraph, Plaintiff also relies on SECNAVINST 1850.4D (1998), an update to the Navy's Disability Evaluation Manual published in 1998. *See* ECF 18-2. Plaintiff has not explained why the 1981 PEB would have applied a Navy regulation that was not promulgated until over a decade later. Accordingly, the Court finds that the governing version of the Navy regulation is SECNAVINST 1850.4 (1977) and that the 1981 PEB's findings are not contrary to that regulation.

[10] Plaintiff has not argued that the rating of his knee condition under diagnostic code 5099-5003 was erroneous. *See* ECF 18 at 31–32 (challenging the appropriate ratings for enthesitic and fibrositis syndromes).

above, the BCNR relied on an advisory opinion which explains that there are conditions which can be listed by diagnostic code under the VASRD that are not required to be evaluated by the PEB. ECF 29 at 30–31 (AR0018–19). Plaintiff cites no authority that the PEB must include diagnostic codes in its findings for conditions that are not found to be unfitting.

Finally, Plaintiff also makes broad challenges to the BCNR's reliance on the presumption of regularity. ECF 18 at 38–41 (arguing the BCNR's reliance on the presumption was inappropriate). In both of its decisions, the BCNR stated that it was unable to locate Plaintiff's PEB file and therefore relied on the presumption. ECF 29 at 10 (AR0004); *id.* at 103 (AR0076). Plaintiff argues in response that the BCNR had ample evidence in the record to conclude that the 1981 PEB made mistakes and violated military regulations. ECF 18 at 38–39; *Watson v. United States*, 113 Fed. Cl. 615, 627 (2013) (noting that, notwithstanding deference and the presumption of regularity, "the military must follow any regulations it issues"). In *Wagner v. Geren*, another court in this district found that the presumption of regularity did not apply where there was evidence in the record that the Army's processes were littered with errors, including "the miscalculation of the plaintiff's service time, the incorrect statutory authority and the missing form." 614 F. Supp. 2d 12, 20 (D.D.C. 2009); *see Albino v. United States*, 78 F. Supp. 3d 148, 165 (D.D.C. 2015) (citing "numerous and well-documented" problems in a plaintiff's evaluation sufficient to overcome the presumption of regularity, including an erroneous height, weight, referral date, and list of future assignments). But, as discussed above, the Court disagrees that any records "clearly demonstrate[]" that the PEB committed errors. And while the Court recognizes that the BCNR was also obligated to "resolve[]" reasonable doubts about disability ratings in favor of the service member, 38 C.F.R. §§ 3.102, 4.3, the BCNR decisions and advisory opinion

18

concluded that they did not see any evidence in the record leading them to harbor substantial doubts about the 1981 PEB's processes.

The BCNR has adequately explained why the presumption applies here and should govern this case. As the Court reiterates, Plaintiff's complete 1981 PEB records are lost. Plaintiff has provided a single page of its findings, but additional pages are missing. *See* ECF 29 at 67 (AR0047) (box on PEB findings reference "Page 2 of Fact Sheet"); SECNAVINST 1850.4, Appendix H (listing "principal forms employed in the Disability Evaluation System," including multiple forms for informal PEB proceedings). Both Parties agree that at least some of the 1981 PEB's reasoning is not known and cannot be discovered by the BCNR. Then, the question is: What is the BCNR supposed to do when it sees that the 1981 PEB only listed one disability rating and one diagnostic code? What should it infer about the 1981 PEB's deliberations? It could presume that the 1981 PEB properly discharged its duties—listing a 20% rating for the only condition it found unfitting— or it could presume, like Plaintiff does, that the 20% rating is a composite rating that improperly groups together three unfitting conditions. Because the BCNR was bound to apply the presumption of regularity, it had to assume that the 1981 PEB reached the legally permissible conclusion. 32 C.F.R.§ 723.3(e)(2) (requiring the BCNR, "in the absence of substantial evidence to the contrary," to presume that military personnel "have properly discharged their official duties"). Plaintiff asks the BCNR, in the absence of the 1981 PEB records, to "assume[] that a mistake was made," but that argument "essentially presumes *irregularity* in the prior proceedings—which is precisely the opposite of the legal presumption that the BCNR is required to rely on." *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 144 (D.D.C. 2014) (Jackson, K.B., J.).

As detailed above in the background section, the 1981 PEB decision was the culmination of an extensive review process—including multiple MEBs, TDRL examinations, and PEBs. At

the time of his discharge in 1981, the PEB intentionally chose to discharge Plaintiff with a 20% rating, providing a lump-sum severance payment. The BCNR applied the presumption of regularity as to how the 1981 PEB reached that decision. Plaintiff "has not provided any evidence, much less substantial evidence, of irregularity" in that years-long process. *Id.* As a result, he has failed to rebut the "presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997).

### B. Arbitrary and Capricious

Next, Plaintiff claims that the BCNR's decision was arbitrary and capricious for several reasons, but the Court finds his arguments similarly unavailing.

First, Plaintiff argues that the BCNR failed to evaluate the 1981 PEB's allegedly inexplicable reversal of the 1976 PEB rating. The 1976 PEB findings listed two conditions: (1) the bilateral knee condition, with a VA code of 5099-5033 and an approximately 20% disability rating, and (2) enthesitic syndrome in the right shoulder, with a VA code of 5024 and a 10% disability rating. ECF 29 at 61 (AR0041). The 1981 PEB removed the diagnostic code and disability rating for the shoulder condition, leaving a total disability rating of 20%. *Id.* at 67 (AR0047). But while "[t]here may have been sufficient evidence for the Navy to conclude that" Plaintiff's disability rating should have been 30%, "it was also reasonable for the Navy to reach the opposite conclusion." *Mueller v. Winter*, 485 F.3d 1191, 1200 (D.C. Cir. 2007). The Court's role is not to decide which rating is correct, but only to examine "whether the decision making process was deficient." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995).

Plaintiff argues that the BCNR failed to consider that Plaintiff's "disability rating had stood at 30% for a full five years . . . until the 1981 PEB inexplicably reversed course and downgraded"

the rating. ECF 18 at 34. But in reviewing this argument, the BCNR noted that there was no "error or injustice apparent in the findings of the PEB or of the medical professionals during [Plaintiff's] evaluations in the PPE and [his] eventual discharge from the TDRL with a 20% rating." ECF 29 at 9 (AR0003). Because Plaintiff was "appropriately evaluated by professionals," the BCNR concluded that Plaintiff's separation with a 20% disability rating was supported by the presumption of regularity. *Id.* at 10 (AR0004). Additionally, the advisory opinion notes that while Plaintiff argues that the omission of the 10% rating for enthesitic syndrome was "due to clerical errors," no evidence existed indicating that the 1981 PEB findings "did not accurately reflect the deliberations of the PEB as complete." *Id.* at 9 (AR0003).

The 1981 PEB's reversal is only unexplained because the files that likely document its reasoning are missing. The Court does not view the 1981 PEB's change of the disability rating from 30% to 20% as an inherently arbitrary act. While neither the Court nor the BCNR can speculate as to its reasoning, the 1981 PEB could have found that the enthesitic syndrome was unfitting in 1976 but no longer unfitting in 1981 for a number of reasons, including due to changes in "the nature and degree of functional impairment" of Plaintiff's duties. *See* SECNAVINST 1850.4, § 207(b). In the absence of any detailed records, the BCNR correctly presumed that the reviewing medical professionals "properly discharged their official duties" in reviewing evidence and arriving at the lower rating. *Id.* Plaintiff has failed to meet his burden of establishing that adopting the 20% rating constituted a "material legal error" or "injustice." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014), *aff'd sub nom., Fulbright v. Murphy*, 650 Fed. App'x 3 (D.C. Cir. 2016) (citation omitted).

Second, Plaintiff argues that the BCNR failed to consider Plaintiff's medical records and VA ratings. The BCNR did consider those records, however, because it relied on an advisory

21

opinion in which a doctor reviewed the totality of Plaintiff's medical records. ECF 29 at 30 (AR0018) (advisory opinion noting that Plaintiff provided evidence including a "summary table of his service medical records" and a "screen print listing of VA Disabilities"). After reviewing those documents, the advisory opinion concluded that Plaintiff's in-service diagnoses were properly "documented in his service medical and personnel records" and that his "clinical history, diagnoses, treatments, and disposition recommendations" were appropriately chronicled through his multiple MEBs, PEBs, and TDRL examinations. *Id.* at 31 (AR0019). In light of this documentation, the advisory opinion concluded that "the preponderance of objective clinical evidence" provided insufficient support for Plaintiff's claim that he should have received a higher disability rating. *Id.* The BCNR quoted and adopted these conclusions, *id.* at 9 (AR0003), and stated that it "concurred" with the advisory opinion's findings, including that Plaintiff "did not provide new or additional information that was not already reviewed." *Id.* at 10 (AR0004). Accordingly, the BCNR has met its burden to consider these forms of proffered evidence. *Rutledge*, 2024 WL 3225958, at *9 (noting that the BCNR "need not tick through and refute each exhibit" but must "engage with [Plaintiff's] core arguments and address his counterevidence").

Third, Plaintiff argues that the BCNR failed to properly apply the VASRD to his medical conditions, including adding a 10% required rating per joint affected based on painful motion. 38 C.F.R. §§ 4.40, 4.59, 4.71a. These arguments largely re-package Plaintiff's contrary-to-law arguments about applying the correct diagnostic codes to Plaintiff's enthesitic and fibrositis syndromes. ECF 18 at 36. Plaintiff argues that under diagnostic codes 5024 and 5025, Plaintiff was entitled to receive a rating of at least 10% when his shoulder was symptomatic. *Id.* And he argues that the BCNR failed to "grapple with evidence" that, even under diagnostic code 5003, his conditions warranted a 10% rating "*per joint affected* based on painful motion." *Id.* at 37. While it

22

is true that the VASRD requires that functional loss and painful motion be considered in evaluating disabilities, 38 C.F.R. §§ 4.40, 4.59, these arguments do not address whether the 1981 PEB found these medical diagnoses to contribute to Plaintiff's unfitness and warrant an assignment of diagnostic codes by the PEB in the first place. *See supra* Section III.A. Additionally, these arguments also do not respond to the BCNR's logic stating that it relied on a medical advisory opinion which found no irregularities in Plaintiff's medical processing and therefore presumed that the 1981 PEB evaluated Plaintiff's medical factors, including painful motion and functional loss, appropriately.

Finally, Plaintiff argues that the BCNR's decision is arbitrary and capricious because it relied on an unreasoned advisory opinion. ECF 24 at 19–20 (arguing that the BCNR's "reliance on the Advisory Opinion compounds the BCNR's APA violations"). As an initial matter, it is well-settled that the BCNR can meet its obligation "to provide a reasoned explanation" by "referring the reader to clearly relevant sources" including advisory opinions. *Roberts*, 741 F.3d at 159–60. But Plaintiff correctly notes that the advisory opinion itself must engage in reasoned decision making in order for the BCNR to cite it. Plaintiff argues that the advisory opinion ignored his "new and material evidence," including "prior and corrected PEB findings," "treating notes and periodic TDRL evaluations showing worsening symptoms," and "a comprehensive explanation of how his conditions were improperly combined and underrated." ECF 24 at 20. But the advisory opinion walks through each of Plaintiff's MEB, PEB, and TDRL examinations. ECF 29 at 27–29 (AR0015–17). Dr. Alonso stated that Plaintiff's "in-service diagnoses" of the three conditions were "documented" and "chronicled" throughout. *Id.* at 31 (AR0019). The advisory opinion explained that it examined each of Plaintiff's medical records and found that, in the absence of the complete PEB file, the 1981 PEB findings were likely to "accurately reflect the deliberations of

the PEB as complete" and Plaintiff provided no clinical evidence sufficient to support a higher disability rating. *Id.*

In sum, from his 1974 MEB decision to the 1981 PEB decision, Plaintiff "was seen and evaluated by medical professionals, who reached medical conclusions." *Wagner*, 614 F. Supp. 2d at 20. Sitting in review in 2020 and 2023, the BCNR's role was not to independently evaluate Plaintiff's medical conditions, but to determine "whether [his] separation without medical retirement constitutes an injustice warranting relief." *Markel v. Del Toro*, No. 22-cv-1389, 2025 WL 304875, at *6 (D.D.C. Jan. 27, 2025). The BCNR relied on an advisory opinion and the presumption of regularity in concluding that Plaintiff's medical records did not contain evidence warranting a correction of his disability rating. Although Plaintiff "disagrees with the final decision, the record indicates that the [Department] reviewed the evidence and came to a reasoned conclusion." *Wagner*, 614 F. Supp. 2d at 20.

*   *   *

For the foregoing reasons, the Department's cross-motion for summary judgment, ECF 21, is **GRANTED**, and Plaintiff's motion for summary judgment, ECF 18, is **DENIED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 27, 2026